**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                           Case No. 04-CR-253

**SAMUEL ALEXANDER**
        Defendant.

---

## SENTENCING MEMORANDUM

### I. FACTS AND BACKGROUND

After pulling over a vehicle in which defendant Samuel Alexander was a rear seat passenger, officers saw defendant reach toward the floor in front of him. After ordering the occupants out, the officers looked under the seat and found a pistol and small quantities of heroin and cocaine. When they attempted to arrest defendant, he broke free but the officers apprehended him after a brief foot chase. After being provided with Miranda warnings, defendant admitted the gun and drugs were his.

The State of Wisconsin originally charged defendant with drug and weapon possession but later dismissed in favor of federal prosecution. The government then indicted defendant on charges of carrying a firearm during a drug trafficking offense, 18 U.S.C. § 924(c), possession with intent to distribute heroin, 21 U.S.C. § 841(a), and felon in possession of a firearm, 18 U.S.C. § 922(g). Defendant pleaded guilty to all three charges, and the probation office prepared a pre-sentence report ("PSR"), which calculated

his offense level ("OL") as 15 on counts two and three,[1] his criminal history category ("CHC") as V, and the imprisonment range as 37-46 months on counts two and three, with a 60 month mandatory consecutive term on count one, the § 924(c) charge. See U.S.S.G. § 2K2.4.

Neither side objected to the PSR's calculations or sought a departure, but defendant requested a sentence of five years and one day, while the government argued for a guideline sentence. In this memorandum, I address the parties' contentions and set forth the reasons for the sentence imposed.

## II. DISCUSSION

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[1] The OL on count two was 18 based on defendant's possession of 6.84 grams of cocaine and 21.33 grams of heroin, which converted to 22.698 kilograms of THC. U.S.S.G. § 2D1.1(c)(11); cmt. n.10. Defendant did not receive an enhancement for weapon possession under § 2D1.1(b)(1) because of the § 924(c) charge. U.S.S.G. § 2K2.4 cmt. n.4. His OL on count three was 14 because he was a prohibited person but, despite a lengthy record, had no qualifying predicate offenses sufficient to raise the level. U.S.S.G. § 2K2.1(a)(6). He did not receive an enhancement under § 2K2.1(b)(5) for possessing the gun in connection with another felony, i.e. the drug count, again because of the § 924(c) charge. U.S.S.G. § 2K2.4 cmt. n.4. The PSR grouped counts two and three under § 3D1.2, for an adjusted level of 18. Subtracting 3 for acceptance of responsibility under § 3E1.1, the final OL was 15.

2

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The statute operates sequentially. First, the court must consider the specifics of the case before it – the nature and circumstances of the offense and the history and characteristics of the defendant. Second, the court must consider the facts of the case in light of the purposes of sentencing and the needs of the public. Third, the court must translate its findings and impressions into a numerical sentence. In doing so, the court must consider the kinds of sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing a specific sentence, the court must also avoid unwarranted sentence disparities. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). The statute ultimately directs the court, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing identified in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

A.  **Specifics of Case**

   1.  **Nature of Offenses**

   Possession of guns and drugs are serious offenses. Defendant's attempts to hide the contraband and run away from the officers were aggravating factors. However, the fact that defendant acknowledged ownership of the contraband, possessed only a small amount of cocaine and heroin, and did not have the gun on his person or attempt to use it slightly mitigated the offenses.

   2.  **Character of Defendant**

   Defendant, age forty, had a lengthy criminal record stretching back more than twenty years. In 1983, at age eighteen, he was convicted of assault with a deadly weapon and sentenced to 116 months in the custody of the California Youth Authority. In 1989, he was convicted of drunk driving and vandalism; in 1990, disturbing the peace and felon in possession (for which he received two years in prison); in 1992, driving with a suspended license and drunk driving; in 1993, public consumption of alcohol; in 1995, corporal injury to spouse; in 1998, possession of cocaine (for which he received five years in prison); and in 2003, driving with a suspended license and giving a false name. Defendant's record indicated a history of alcohol and drug abuse, for which he had received minimal treatment.

   Defendant graduated from high school, had some post-secondary education and was clearly intelligent. Nevertheless, he had a limited employment record. He married in 1991 but later separated from his wife. However, she made positive comments about him as did his current girlfriend. Defendant has a fourteen year old daughter from a previous relationship, and the PSR indicated that he was an involved father, assuming custody of

4

her over the summers and on holidays. During his allocution, defendant expressed concern that he would be absent from her life.

**B.     Needs of Public and Purposes of Sentencing**

Given his extensive record, defendant presented a risk of recidivism. In addition, a substantial period of confinement was necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence to criminal conduct. Defendant owed no restitution, and his crime involved no identifiable victims. Although he needed treatment for his alcohol and drug abuse, because of the seriousness of his offense and his inability to deal with his problems in the community, his treatment needs had to be addressed in a confined setting.

**C.     Consideration of Guidelines, Types of Sentences Available
         and Imposition of Sentence**

The guidelines called for a term of 37-46 months on counts two and three, and count one carried a statutory mandatory minimum 60 month consecutive term. Defendant requested that I impose a total sentence of 60 months plus one day, arguing that the three counts of conviction arose from a single incident, and that the five year mandatory minimum penalty on count one adequately took into account the conduct in counts two and three.

One of the primary goals of the Sentencing Reform Act ("SRA"), which remains valid even after United States v. Booker, 125 S. Ct. 738 (2005), is the promotion of consistency and proportionality in sentencing. See, e.g., Gary T. Lowenthal, Mandatory Sentencing Laws: Undermining the Effectiveness of Determinate Sentencing Reform, 81 CALIF. L. REV. 61, 92 (Jan. 1993) ("[T]he Sentencing Commission sought to assure that in each case the

5

punishment is proportional to the defendant's offense."); Kate Stith & Jose Crabranes, Judging Under the Federal Sentencing Guidelines, 91 NW L. REV. 1247, 1247 (1997) ("The Sentencing Reform Act of 1984 sought to bring consistency, coherence, and accountability to a federal sentencing process that was deficient in these respects."). The Sentencing Commission sought to accomplish this goal "by establishing a continuum of graduated increases and decreases in sentence severity for a wide variety of aggravating and mitigating circumstances." Lowenthal, supra, at 92; see, e.g., U.S.S.G. §§ 2B1.1(b)(1); 2D1.1(b)(1); 2D1.1(c); 3B1.2; 3E1.1. [2]

However, statutes establishing mandatory minimum sentences isolate a single aggravating circumstance and require a disproportionate increase in punishment whenever the circumstance is present. Lowenthal, supra, at 92. This can lead to sharp differentials or "cliffs" based on small differences in offense conduct. UNITED STATES SENTENCING COMMISSION, SPECIAL REPORT TO CONGRESS: MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 29-30 (1991) (noting § 924(c) as an example of a statutory mandatory minimum that overrides the guideline approach of incremental punishment). Mandatory minimums can therefore distort the rationality of the guideline system set up by the SRA. William W. Wilkins, Jr., Letter from Chairman Wilkins Concerning Mandatory Minimums, re-printed in, 3 FED. SENT'G REP. 103 (Sept./Oct. 1990);

---

[2] Commentators disagree over how well the Commission's product has achieved its goals. The theory of incremental punishment has its own problems. See, e.g., Albert W. Alschuler, The Failure of Sentencing Guidelines: A Plea for Less Aggregation, 58 U. CHI. L. REV. 901 (1991). Whatever their flaws, however, the guidelines promoted some individualization of sentencing by providing graduated increases and decreases based on a variety of factors; unlike mandatory minimums, the guidelines do not base sentences on a single circumstance.

6

see also William W. Wilkins Jr. et al., Competing Sentencing Policies in a "War on Drugs" Era, 28 WAKE FOREST L. REV. 305, 320 (1993) (stating that while the guidelines are structured so that a particular factor makes an incremental change, mandatory minimums distort this rational approach by creating sharp differences in sentences).

Some mandatory minimums distort more than others. The Commission sought to incorporate the mandatory minimums in certain drug statutes by basing the § 2D1.1(c) drug quantity table on the threshold amounts provided by the statutes. For example, 21 U.S.C. § 841(b)(1)(B) subjects a distributor of 500 grams of cocaine to a five year mandatory minimum. Thus, the Commission set the guideline range for that weight at 63-78 months assuming no other aggravating or mitigating factors. See U.S.S.G. § 2D1.1(c)(7); ch. 5 pt. A. Similarly, 21 U.S.C. § 841(b)(1)(A) subjects a distributor of five kilograms to a ten year mandatory minimum, and the Commission set such an offender's base guideline range at 121-151 months, U.S.S.G. § 2D1.1(c)(4); ch. 5 pt. A. Thus, in the drug trafficking guideline, the Commission attempted to track the statute.

In the case of § 924(c), however, the Commission basically gave up on attempting to incorporate the mandatory minimum into the guidelines and thereby minimize the distortion in penalties created by Congress's interjection of a mandatory minimum into a guideline sentencing regime. See Lowenthal, supra, at 94. Rather, it simply provided that the "guideline" for a § 924(c) offense was the statutory penalty. U.S.S.G. § 2K2.4(b). The Commission did seek to avoid "double counting" by eliminating any guideline enhancements based on the possession of a weapon if the defendant was also convicted of the underlying drug offense, see § 2K2.4 cmt. n.4, but this did little to eliminate the distortion resulting from a § 924(c) conviction. In the present case, for instance, if the

7

government had not charged defendant with the § 924(c) violation, the guideline applicable to his drug offense would have taken into account his possession of a weapon by imposing a 2 level enhancement under § 2D1.1(b)(1), and the guideline applicable to the felon in possession count would have taken into account his possession of drugs by imposing a 4 level enhancement under § 2K2.1(b)(5).[3] Defendant would have faced a 46-57 month range[4] rather than the 97-106 month range that the § 924(c) charge produced. Thus, the government's decision to charge defendant under § 924(c) caused a substantial difference in his potential penalty.

This disparity implicates and subverts another of the primary goals of the SRA – to promote sentencing based on "real conduct" rather than just the charged offense. In fact, the remedial majority in Booker considered this aspect of the SRA so critical that it determined Congress would rather sacrifice mandatory sentencing guidelines than have a charge-based sentencing system. See Booker, 125 S. Ct. at 761 (remedial majority opinion); id. at 780 (Stevens, J., dissenting); id. at 790 (Scalia, J., dissenting). While the Commission did not develop a "pure" real offense system, U.S.S.G. § 1A1.1 pt. A n.4, it did seek to ensure that the guidelines promoted true uniformity. As the Booker remedial majority noted:

---

[3]A defendant who violates § 924(c) will always qualify for an enhancement under § 2D1.1(b)(1), although the converse is not necessarily true. See, e.g., United States v. Thomas, 294 F.3d 899, 905-06 (7th Cir. 2002). The standards under § 2K2.1(b)(5) and § 924(c) are comparable. See United States v. Routon, 25 F.3d 815, 818-19 (9th Cir. 1994).

[4]The OL on count two would have been 20 (18+2), and the OL on count three would have been 18 (14+4). Because the counts would have been grouped under § 3D1.2(c), the adjusted OL would have been 20. Subtracting 3 for acceptance, the final OL would have been 17. Coupled with a CHC of V, the range would have been 46-57.

8

> That uniformity does not consist simply of similar sentences for those convicted of violations of the same statute – a uniformity consistent with the dissenters' remedial approach. It consists, more importantly, of similar relationships between sentences and real conduct, relationships that Congress' sentencing statutes helped to advance and that [the charge-based] approach would undermine. In significant part, it is the weakening of this real-conduct/uniformity-in-sentencing relationship . . . that leads us to conclude that Congress would have preferred no mandatory system to the system the dissenters envisage.

Id. at 761 (internal citations omitted).

In the present case, the government's decision to charge defendant with a violation of § 924(c) ensured that his guideline range would depend largely on his offense of conviction, rather than his "real conduct." This distorts the sentencing system envisioned by the SRA and introduces disparity based on charging decisions. See Lowenthal, supra, at 94-95 (noting that the sentencing consequences allow prosecutors to use § 924(c) as a powerful bargaining chip); Julie R. O'Sullivan, In Defense of the U.S. Sentencing Guidelines' Modified Real-Offense System, 91 Nw. U.L. Rev. 1342, 1414 (Summer 1997) ("The Guidelines' modified real-offense system is designed not to interfere with traditional prosecutorial charging criteria but rather to dampen the extent to which prosecutors may bargain in the currency of sentence to accommodate those criteria.").

Senator Hatch summarized the problems caused by imposing mandatory minimums on top of a guideline system:

> While the Commission has consistently sought to incorporate mandatory minimums into the guidelines system in an effective and reasonable manner, in certain fundamental respects, the general approaches of the two systems are inconsistent. Whereas the guidelines permit a degree of individualization in determining the appropriate sentence, mandatory minimums employ a relatively narrow approach under which the same sentence may be mandated for widely divergent cases. Whereas the guidelines provide for graduated increases in sentence severity for additional wrongdoing or for prior convictions, mandatory minimums often result in sharp variations in

9

Case 2:04-cr-00253-LA   Filed 08/09/05   Page 9 of 13   Document 37

>sentences based on what are often only minimal differences in criminal conduct or prior record. Finally, whereas the guidelines incorporate a "real offense" approach to sentencing, mandatory minimums are basically a "charge-specific" approach wherein the sentence is triggered only if the prosecutor chooses to charge the defendant with a certain offense or to allege certain facts. In view of these distinctions, the Judicial Conference and the Federal Courts Study Committee concluded that mandatory minimum sentences were more rigid than the guidelines and, thus, were inconsistent with the sentencing goals adopted by Congress under the SRA.

The Honorable Orrin G. Hatch, The Role of Congress in Sentencing: The United States Sentencing Commission, Mandatory Minimum Sentences, and the Search for a Certain and Effective Sentencing System, 28 WAKE FOREST L. REV. 185, 194-95 (Summer 1993) (footnotes omitted).[5]

Because of the distorting effects of the § 924(c) mandatory minimum on the system of incremental punishment established by the sentencing guidelines, defendant's argument in favor of a sentence of five years and one day was appealing. Of course, defendant's § 924(c) conviction required me to impose a 60 month term on count one consecutive to whatever sentence I determined to be appropriate on counts two and three. But after Booker, although I must still impose any penalty mandated by statute, I have discretion to modify the guideline portion of a sentence in order to produce a reasonable total sentence. Cf. United States v. Beamon, No. 04-CR-55, 2005 U.S. Dist. LEXIS 12689, at *24 (E.D. Wis. June 15, 2005) (holding that although Booker did not grant courts authority to sentence below a mandatory minimum, it did permit courts to modify a guideline sentence

---

[5]To this list I would add that like other mandatory minimums § 924(c) does not, unless the defendant "brandished" or "discharged" the gun, permit a sentencing court to consider the actual circumstances of the offense. For example, the court must impose the same sentence on a defendant who uses a firearm to commit a bank robbery or intimidate a drug customer as on one who has a gun in the glove compartment of his car while he delivers drugs. See Lowenthal, supra, at 111.

10

above the statutory floor). The guidelines are now advisory, but courts must still seriously consider them, and in so doing may take into account the distortions created by mandatory minimums in order to avoid imposing a total sentence that would, under the circumstances of the particular case, be contrary to the goals of the SRA. See, e.g., Lowenthal, supra, at 65 (arguing "that the interaction between determinate sentencing and mandatory punishment results in precisely the same type of unwarranted sentencing disparity that characterized indeterminate sentencing laws [and] destroy consistency and proportionality in punishment and thwart the very purpose of sentencing reform."); see also 18 U.S.C. § 3553(a)(6) (directing courts to avoid unwarranted disparity between defendants with similar records guilty of similar criminal conduct).

Under the particular circumstances of the present case, however, I concluded that a sentence of 60 months and one day was insufficient to serve the purposes set forth in § 3553(a)(2). Therefore, I decided to impose a sentence that recognized the goals of the SRA yet accounted for the presence of the aggravating factors in the present case, specifically defendant's lengthy record, his involvement in violent and drug-related offenses, and his attempt to flee.

One way to translate findings under 3553(a) into a numerical sentence is to use guideline terminology. See Galvez-Barrios, 355 F. Supp. 2d at 964. This allows a court to maintain the consistency and proportionality required by the SRA while permitting it to tailor the sentence in light of other statutory purposes in § 3553(a). Given defendant's record, I found it appropriate to consider imposing sentence as if defendant's base OL on count 3 were 20 under § 2K2.1(a)(4), which it would have been had he previously been convicted of a "crime of violence" or a "controlled substance offense," as those terms are

defined in § 4B1.2. Defendant was convicted of assault with a deadly weapon in 1983, an offense too old to count under §§ 4A1.2(e) & 4B1.2(a), and corporal injury to spouse in 1995, an offense that ostensibly did not qualify as a crime of violence under § 4B1.2(a) because it was not a felony under applicable state law. However, both of these crimes otherwise met the definition of crime of violence in § 4B1.2(a) because they involved the use, attempted use or threatened use of physical force against another. Similarly, defendant was convicted of possession of cocaine in 1998. A charge of possession of cocaine base for sale was dismissed, and defendant admitted to the PSR writer that he was arrested for selling drugs. Though the offense of conviction – simple possession (rather than distribution) – precluded an enhanced base OL under § 2K2.1 and 4B1.2(b), the severity of the sentence (five years in prison) and the underlying facts of the case supported treating it more seriously. Adding 4 under § 2K2.1(b)(5) based on his commission of the drug offense, defendant's OL on count three would have been 24, minus 3 for acceptance of responsibility, for a final OL of 21. The resulting range would have been 70-87 months.

I found that a sentence in the middle of that range was sufficient but not greater than necessary to satisfy the purposes of sentencing. This was so because of defendant's lengthy record, involvement in several violent crimes and the somewhat aggravated nature of the offense. This sentence also took into account Congress's view that defendants who possess guns with drugs should receive substantial additional punishment. Thus, I found that a concurrent sentence of 19 months on counts two and three, followed by 60 months consecutive on count one, was reasonable.

Defendant also requested a sentence adjustment to account for the 111 days he spent in state custody after his arrest in this case, which the Bureau of Prisons ("BOP") would not credit him. The Commission's policy statement § 5G1.3(b) supported his request. Section 5G1.3(b) requires a court to adjust a sentence to account for any period of imprisonment already served arising out of the same conduct as in the instant offense if the court determines that the BOP will not credit such time. U.S.S.G. § 5G1.3(b). Further, under application note 4 a court may depart when the defendant has completed serving a sentence to which § 5G1.3(b) would have applied. U.S.S.G. § 5G1.3 cmt. n.4; see also United States v. Brannon, No. 04-CR-220, 2005 U.S. Dist. LEXIS 15066, at *8-10 (E.D. Wis. July 7, 2005) (discussing sentence adjustments under § 5G1.3). Pursuant to § 3553(a)(5), I gave effect to the Commission's policy and reduced the sentence by four months.

### III. CONCLUSION

For the foregoing reasons, I committed defendant to the custody of the Bureau of Prisons for 15 months on counts two and three to run concurrently, and 60 months consecutive on count one for a total of 75 months. I recommended that defendant participate in drug treatment while in prison. Upon release, I ordered that he served a three year term of supervised release, the conditions of which appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 9th day of August, 2005.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge